```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                    :
KIMBERLY D. REED
                                    :

    v.                              :   Civil Action No. DKC 23-651

                                    :
IRONSHORE SPECIALTY INSURANCE
COMPANY                             :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this insurance coverage dispute is the motion to dismiss filed by Defendant Ironshore Specialty Insurance Company.  (ECF No. 11).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be denied.

**I.   Background**

The following facts are alleged in the Complaint.  (ECF No. 1).  In 2019, Plaintiff Kimberly D. Reed joined the law firm Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers") as a shareholder in the Corporate and Business Transactions practice group.  (ECF No. 1 ¶ 7).  As part of her employment agreement with Shulman Rogers, Plaintiff was prohibited from working for any other firm, including her own.  (*Id.* ¶ 8).  Between March 15, 2020 and March 20, 2020, Plaintiff represented Regina Lee and her company, Lee & Lee Trading, on a pro bono basis while employed at Shulman

Rogers. (*Id.* ¶ 15-17). Shortly after March 31, 2020 or April 1, 2020, Plaintiff reached an agreement to cease her employment with Shulman Rogers on April 22, 2020. (*Id.* ¶ 19-20). Because Plaintiff was informed that she would lose access to her Shulman Rogers email account imminently, Plaintiff communicated with and on behalf of clients using a non-Shulman Rogers email in anticipation of her April 22, 2020 separation date. (*Id.* ¶ 21). During this time, Plaintiff communicated on behalf of Lee & Lee Trading to negotiate a contract with Johns Hopkins Health System Corp. ("JHHSC") for the purchase of 500,000 medical grade respirator masks. (*Id.* ¶ 22). On April 24, 2020, JHHSC entered into a product purchase agreement with Lee & Lee Trading and transferred the purchase price to an escrow account with a third-party escrow agent. (*Id.* ¶ 23). Lee & Lee Trading failed to fulfill the purchase agreement, and JHHSC obtained a $1,700,109.00 default judgment against Ms. Lee and Lee & Lee Trading. (*Id.* ¶ 24). Because Ms. Lee and Lee & Lee Trading lack the funds to pay the default judgment against them, on May 6, 2022, JHHSC filed an amended complaint in the Circuit Court for Baltimore County against Plaintiff and her law firm (the "Underlying Complaint"), which she opened after leaving Shulman Rogers. (*Id.* ¶ 25; ECF No. 1-2, at 9). The remaining undismissed count that is pending in JHHSC's suit against Plaintiff and her law firm alleges negligent misrepresentation. (ECF No. 1 ¶ 26).

Defendant issued a "Claims Made and Reported" Lawyers Professional Liability policy to Shulman Rogers that was effective from August 29, 2021 to August 29, 2022 (the "Policy").[1] (ECF No. 1 ¶¶ 27-28). The Policy provides, in part:

> A. The **Insurer** shall pay on behalf of each **Insured** all sums the **Insured** shall become legally obligated to pay as **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** and arising out of the rendering of or failure to render **Professional Legal Services**.
>
> B. The **Insurer** shall have the right and duty to defend any **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** and arising out of the rendering of or failure to **render Professional Legal Services**, including an appeal thereof, seeking **Damages** to which this insurance applies even if any of the allegations are groundless, false, or fraudulent.

(ECF No. 11-2 at 5) (emphasis in original). The Policy's definition of "Insured" provides, in part:

> (1)  the Named Insured;

---

[1] Plaintiff attached to the complaint a later version of the Policy with effective dates spanning from August 29, 2022 to August 29, 2023, (ECF No. 1-3), and notes that the later version is substantially identical to the Policy, (ECF No. 1 ¶ 27). Defendant provided a copy of the Policy. (ECF No. 11-2). Because the Policy is integral to the complaint and its authenticity is not in dispute, the court will cite to the Policy. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (citing *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding that a court may consider a document attached to a motion to dismiss if the document was "integral to the complaint and authentic[,]" such that the complaint's allegations turn on the document's terms).

> (2) if the Named Insured is an individual, such individual;
> (3) if the Named Insured is a partnership or limited liability partnership, such partnership or limited partnership and each lawyer who is a partner thereof including any incorporated partner and each shareholder or any such incorporated partner;
> (4) if the Named Insured is a professional corporation, professional association or limited liability corporation, such professional corporation, professional association or limited liability corporation and each lawyer who is a shareholder or member thereof;
> (5) each lawyer employed by the Named Insured;
> (6) any person who previously qualified or who during the Policy Period qualifies as an Insured under 2, 3, 4 or 5 above, but only to extent such person performs or has performed Professional Legal Services on behalf of the Named Insured[.]

(*Id.* at 6). The "Named Insured" is Shulman Rogers. (*See id.* at 7). The Policy also defines "Professional Legal Services" as "legal services and activities performed for others as a lawyer, and including pro bono legal services[.]" (*Id.*).

Beginning from June 2022, Plaintiff engaged in a series of communications seeking defense and indemnity from Defendant pursuant to the Policy. (ECF No. 1 ¶¶ 32-41). On December 9, 2022, Defendant denied coverage, stating that Plaintiff does not qualify as an "Insured" because her email communications on behalf of Lee & Lee Trading were sent from a non-Shulman Rogers email account. (*Id.* ¶ 37). On February 9, 2023, Plaintiff renewed her

4

demand for defense and indemnity and provided additional evidence supporting her insured status. (*Id.* ¶ 38). On February 22, 2023, Defendant responded that it was still investigating the matter but reiterated its previous finding that Plaintiff does not qualify as an "Insured" and is not entitled to coverage under the Policy. (*Id.* ¶ 40).

On March 9, 2023, Plaintiff filed a complaint in this court against Defendant, alleging that Defendant's denial of coverage constitutes a breach of contract (Count I) and a lack of good faith (Count II). (*Id.* ¶¶ 42-55). On May 12, 2023, Defendant moved to dismiss under Fed.R.Civ.P. 12(b)(6). (ECF No. 11). On May 26, 2023, Plaintiff responded in opposition. (ECF No. 19). On June 9, 2023, Defendant replied. (ECF No. 21).

**II.  Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must include more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v.*

5

*Iqbal*, 556 U.S. 662, 678 (2009). Indeed, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In determining whether a complaint states a plausible claim for relief, the court must consider all well-pleaded allegations in a complaint as true. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Additionally, courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The purpose of the rule is to ensure that the complaint has given the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks omitted). The court may only consider the complaint, documents attached to the complaint, documents explicitly incorporated into the complaint by reference, and documents integral to the complaint where there is no dispute as to the documents' authenticity. *Goines*, 822 F.3d at 166.

**III. Analysis**

First, Defendant contends that Plaintiff's claims in Counts I and II should be dismissed because it owes no duty to defend

Plaintiff against the allegations in the Underlying Complaint. Specifically, Defendant argues that Plaintiff is not an "Insured" covered by the Policy given that the allegations in the underlying complaint do not allege that she was providing professional legal services on behalf of Shulman Rogers and Plaintiff improperly uses extrinsic evidence to support her claim to coverage under the Policy.  (ECF Nos. 11-1, at 10; 21, at 2-6).  Even if the court considers Plaintiff's extrinsic evidence, Defendant contends that the extrinsic evidence fails to show that Plaintiff was providing professional legal services on behalf of Shulman Rogers.  (ECF Nos. 11-1, at 13-14; 21, at 7).  Second, Defendant argues that Plaintiff fails to allege sufficient facts to state a claim in Count II.  (ECF Nos. 11-1, at 14-18; 21, at 8-10).  Plaintiff contends that she has sufficiently stated a claim for relief on both counts.  (ECF No. 19, at 7, 12).

Under Maryland law, if claims are brought against an insurance policyholder that potentially come within the insurance coverage, the insurer has a duty to defend the insured.  *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193-94 (1981). An insurer's duty to defend, which is "broader than the duty to indemnify[,]" is a "contractual duty arising out of the terms of a liability insurance policy."  *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 225 (1997).

Determining whether an insurer has a duty to defend is a two-step process. *Pryseski*, 292 Md. 187, 193. First, the policy must be reviewed to determine the scope of, and any limitations on, coverage. *Id.; Aetna Cas. & Sur. Co. v. Cochran*, 337 Md. 98, 103-04 (1995). Insurance policies are to be construed pursuant to "ordinary principles of contract interpretation." *Megonnell v. United Servs. Auto. Ass'n*, 368 Md. 633, 655 (2002) (internal quotation marks omitted). Thus, the words used in a policy should be given "their usual, ordinary, and accepted meaning"—*i.e.*, the "meaning a reasonably prudent layperson would attach to the term." *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 779 (1993).

As the second step in the duty-to-defend inquiry, the allegations of the underlying complaint must be analyzed to determine whether they would potentially be covered under the subject policy. *Pryseski*, 292 Md. at 193; *Cochran*, 337 Md. at 103-04. To trigger the duty to defend, the underlying complaint must allege a cause of action that is potentially covered by the policy, no matter how "attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643 (1996). If a potentiality for coverage exists, the insurer is obliged to defend its insured even though the cause of action cannot possibly succeed, either in law or in fact. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 408-09 (1975). Any doubt that an insurance policy covers the allegations in the underlying

complaint should be resolved in the insured's favor. *Cochran*, 337 Md. 98, 107 (quoting *U.S. Fid. & Guar. Co. v. Nat'l Paving & Contracting Co.*, 228 Md. 40, 54 (1962)).  Here, the parties agree on the scope of the Policy with regard to the definition of "Insured" and limit their dispute to whether the allegations in the Underlying Complaint are covered by the Policy.  (ECF No. 21, at 3).

An insured is entitled to present extrinsic evidence beyond the four corners of the underlying complaint in support of a potentiality of coverage "where the underlying complaint 'neither conclusively establishes nor negates a potentiality of coverage.'" *Walk v. Hartford Cas. Ins. Co.*, 382 Md. 1, 16 (2004) (quoting *Cochran*, 337 Md. at 108).  This is because "[t]he promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums."  *Cochran*, 337 Md. at 110 (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 409 (1975)).  "Allowing an insured the opportunity to establish a defense to tort allegations which may provide a potentiality of coverage under an insurance policy prior to the insured incurring expenses associated with maintaining a defense in that tort action is precisely what the insured bargained for under the insurance contract."  *Id.*

An insured plaintiff states a claim for breach of contract against a defendant insurer by alleging that the insurer owed a

duty to defend against allegations in the underlying complaint and breached it by denying coverage. *See RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)) ("[I]n order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant."). If an insured fails to state a claim for a breach of contract because the plaintiff does not plead facts triggering coverage under the insurance policy, the corresponding lack of good faith claim arising from the denial of coverage necessarily fails. *See All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F.Supp.3d 409, 417 (D.Md. 2014) (stating that because "no actual damages under an insurance policy [for a lack of good faith] can be claimed by one who is not entitled to coverage under the policy[,]" conduct in the context of a correct denial of coverage that would otherwise evidence a lack of good faith "does not itself create coverage when the insured is not otherwise entitled to it.").

Defendant argues that because the allegations in the Underlying Complaint conclusively negate any potentiality of coverage under the Policy, the court should not consider extrinsic evidence in the form of Plaintiff's allegations that (1) Ms. Lee was a Shulman Rogers client whom Plaintiff began representing prior to leaving Shulman Rogers; (2) Plaintiff began contract

10

negotiations with JHHSC before leaving Shulman Rogers; (3) Plaintiff's employment contract with Shulman Rogers barred her from concurrently working for any other law firm, including her own; and (4) Plaintiff used a non-Shulman Rogers email account to communicate with JHHSC because access to her Shulman Rogers account was terminated before she left the firm.[2]  (ECF No. 11, 10-12). According to the Underlying Complaint, Plaintiff and her law firm, Reed International Law & Consulting, LLC ("Reed International"), negligently misrepresented Lee & Lee Trading's ability to timely procure and deliver masks "[p]rior to entering into the product purchase agreement [on April 24, 2020.]"  (ECF No. 1-2 ¶ 42). Under the Policy, Defendant must provide coverage to the extent that Plaintiff provided legal services on behalf of Shulman Rogers. (*See* ECF No. 11-2 at 6).  Defendant asserts that the

---

[2] In response, Plaintiff contends that Defendant's argument that Plaintiff may not use extrinsic evidence to establish a potentiality of coverage triggering Defendant's duty to defend is improper in the context of a motion to dismiss because it "ask[s] the court to reach the merits and decide the issue of coverage by finding that [Plaintiff] does not qualify as an 'insured' under the [P]olicy."  (ECF No. 19, at 2, 9).  Plaintiff is incorrect. Here, the court's threshold inquiry focuses on whether Plaintiff may *allege* a potentiality of coverage via extrinsic evidence, which, taken as true, trigger Defendant's duty to defend Plaintiff as an "Insured" under the Policy.  This inquiry does not reach the merits of whether Plaintiff's allegations are actually true, such that she qualifies as an "Insured" under the Policy. Hence, Plaintiff's observation that Defendant cites to cases reaching the merits on summary judgment in support of its arguments regarding the duty to defend and the use of extrinsic evidence has no bearing on whether the court's determination of those issues is merits-related. (*Id.* at 8 n.1).

11

misrepresentations at issue in the Underlying Complaint first occurred when Plaintiff worked for Reed International, post-separation from Shulman Rogers, because the Underlying Complaint mentions Reed International and not Shulman Rogers. (ECF No. 21, at 6). Defendant misconstrues the Underlying Complaint. The Underlying Complaint's allegations of when the misrepresentations occurred, not its failure to mention Shulman Rogers, is dispositive. As Plaintiff states, the Underlying Complaint does not clearly limit its allegations of misconduct to the time period after Plaintiff's separation from Shulman Rogers on April 22, 2020, as required to negate conclusively the potentiality of coverage under the Policy. (ECF No. 19, at 10). Rather, the Underlying Complaint alleges that Plaintiff made negligent misrepresentations during the negotiation period leading up to the product purchase agreement's consummation, which could potentially include the time period in which Plaintiff represented Lee & Lee Trading while employed at Shulman Rogers.

Defendant's reliance on *Walk v. Hartford Cas. Ins. Co.* and *Maryland Cas. Co. v. Blackstone Intern. Ltd.* fares no better. (ECF No. 21, at 4-5). The *Walk* court held that the plaintiff insured "stretche[d] the concept of 'potentiality' of coverage too far" by introducing extrinsic evidence when the underlying complaint conclusively negated coverage. (*Id.* at 4) (citing *Walk*, 382 Md. at 6). In *Walk*, the insurer agreed to pay the insured's damages

12

for "advertising injuries," such as copying an advertising style in another advertisement. *Walk*, 382 Md. at 6. Although the underlying complaint alleged that the *Walk* plaintiff breached certain non-solicitation and severance agreements by using proprietary and confidential information to solicit existing clients-with no mention of, or relation to, "advertising injuries"-the *Walk* plaintiff attempted to create the possibility of coverage with extrinsic evidence in the form of cherry-picked phrases from the discovery generally related to advertising. *Id.* at 18-19. While recognizing that "the plaintiffs [in the underlying complaint] need not have used the words 'advertising injury,' or labeled a count in the complaint as 'advertising injury,'" the *Walk* court held that the plaintiff cannot establish a potentiality of coverage when the underlying complaint did not allege an "advertising injury" in any way. *Id.* at 18. The *Blackstone* court similarly declined to consider extrinsic evidence in support of the plaintiff's entitlement to coverage under the "advertising injury" provision of the insurance policy because the underlying complaint's allegations of breach of contract, promissory estoppel, unjust enrichment, quantum meruit, intentional misrepresentation, and accounting did not assert any "advertising injury" and conclusively negated a potentiality of coverage. *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 696-97 (2015). *Walk* and *Blackstone* are distinguishable from

13

this case because here, the Underlying Complaint does not allege a tort that plainly lies outside the Policy's coverage. Rather, the Underlying complaint alleges negligent misrepresentation arising out of Plaintiff's legal representation of Lee & Lee Trading, which would be covered by the Policy if the timing of those misrepresentations overlapped with Plaintiff's employment at Shulman Rogers–failure to mention specifically Shulman Rogers is irrelevant here. Because the Underlying Complaint raises the possibility that the alleged misrepresentations at issue took place prior to Plaintiff's departure from Shulman Rogers, it neither conclusively negates nor establishes the potentiality of coverage. Thus, the court is permitted to consider Plaintiff's extrinsic evidence.

Defendant then argues that Plaintiff's extrinsic evidence also fails to trigger Defendant's duty to defend Plaintiff against the Underlying Complaint's allegations because it does not show that Plaintiff made the alleged misrepresentations while performing legal services on behalf of Shulman Rogers. (ECF No. 21, at 7). Given that the Underlying Complaint "alleges that Plaintiff *and her law firm* made alleged misrepresentations prior to entering into the product purchase agreement[,]" Defendant contends that Plaintiff's extrinsic evidence admits that "she could not possibly have been acting on Shulman Roger[s]'s behalf or for its benefit during her representation of Lee & Lee Trading

14

in the underlying transaction without violating her employment agreement with Shulman Rogers." (*Id.*).  The Underlying Complaint's designation of Reed International as a co-defendant, however, does not necessarily limit Plaintiff's potential liability to misrepresentations made through Reed International because the Underlying Complaint also names Plaintiff in her individual capacity.  Hence, Defendant's assertion that "the extrinsic evidence shows that Plaintiff communicated with JHHSC representatives on Lee & Lee Trading's behalf through her law firm, not Shulman Rogers," is incorrect. (*Id.* at 7-8).  Plaintiff's extrinsic evidence shows that she began engaging in contract negotiations with JHHSC on behalf of Lee & Lee Trading before separating from Shulman Rogers and severing the contract prohibiting her from working for any other firm, including her own–during which the Underlying Complaint's alleged misrepresentations could have occurred. (*See* ECF No. 1 ¶¶ 17, 22).  Resolving all doubts regarding the Policy's coverage of the Underlying Complaint's allegations in favor of Plaintiff, *see Cochran*, 337 Md. 98, 107 (quoting *Nat'l Paving & Contracting*, 228 Md. 40, 54), Plaintiff has alleged facts plausibly establishing a potentiality of coverage triggering Defendant's duty to defend her as an "Insured" under the Policy.  Accordingly, as Plaintiff argues, Plaintiff has stated a plausible breach of contract claim because she asserts that pursuant to the Policy, her representation

15

of Lee & Lee Trading during her employment at Shulman Rogers triggers Defendant's duty to defend, and Defendant breached the Policy by denying coverage. (ECF No. 19, at 7). It follows that Plaintiff's allegation that Defendant lacked good faith in denying coverage also cannot fail on the basis that Defendant did not owe Plaintiff a duty to defend.

Alternatively, Defendant argues that Plaintiff fails to allege any facts to state a claim in Count II because she relies only on legal conclusions that Defendant did not act in good faith. (ECF Nos. 11-1, at 16; 21, at 8-9). Plaintiff contends that she has provided sufficient factual allegations that Defendant denied coverage solely based on the email address used in Plaintiff's communications, without "honestly and accurately" considering the evidence regarding Plaintiff's employment with Shulman Rogers during the negotiation of Lee & Lee Trading's product purchase agreement with JHHSC. (ECF No. 19, at 13).

Maryland law creates an independent statutory cause of action against insurer breach of good faith performance under insurance contracts. *See Dominant Investments 113, LLC v. United States Liab. Ins. Co.*, 247 F.Supp.3d 696, 704 (D.Md. 2017) (citing Md. Code, Cts. & Jud. Proc. § 3-1701). "'Good faith' means an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *Id.*; *see also* Md. Code, Ins. § 27-1001.

16

Good faith is evaluated under a "totality of the circumstances" test, which includes:

> [(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.

*Barry v. Nationwide Mut. Ins. Co.*, 298 F.Supp.3d 826, 830 (D.Md. 2018) (quoting *All Class Const., LLC v. Mut. Ben. Ins. Co.*, 3 F.Supp.3d 409, 416 (D.Md. 2014)). "To assess those factors, courts consider 'the insurer's efforts to obtain information related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available.'" *Id.* (quoting *All Class*, 3 F.Supp.3d at 416).

Magistrate Judge Sullivan's opinion in *Jerry v. Allstate Ins. Co.*, 553 F.Supp.3d 287 (D.Md. 2021), is instructive. In *Jerry*, Magistrate Judge Sullivan held that an insured plaintiff's allegation that an insurer failed to make an informed judgment by disregarding substantial evidence from the plaintiff's experts while relying entirely on its own experts to justify denying coverage sufficiently states a claim of lack of good faith to survive a motion to dismiss. *Id.* at 294-95. Here, Plaintiff analogously alleges that Defendant failed to exercise good faith

17

by denying coverage solely based on the non-Shulman Rogers email address used in Plaintiff's communications without considering evidence that (1) Plaintiff began representing Ms. Lee while working at Shulman Rogers; (2) Plaintiff's negotiations with JHHSC took place while Plaintiff was employed at Shulman Rogers; (3) Plaintiff's employment contract with Shulman Rogers prohibited her from working for any other firm, including her own; and (4) Plaintiff used a non-Shulman Rogers email account because she was informed that she would imminently lose email access, (ECF No. 1 ¶¶ 53-54)–all of which are factual allegations refuting Defendant's contention that the Complaint contains "no allegation that [Defendant] failed to reasonably investigate Plaintiff's claim, that its assessment of the facts was not honest, or that [Defendant] failed to provide a reasonable explanation for its denial of Plaintiff's claim[,]" (ECF No. 11-1, at 10-11, 16-17).

Defendant's attempt to mischaracterize the Complaint as asserting that Defendant "reviewed information concerning the underlying lawsuit, reviewed the text of the Policy, provided a reasonable explanation for its coverage decision, communicated the reason for that decision, and subsequently reviewed the decision in light of additional information[,]" (ECF No. 21, at 9), fares no better as it is plainly contradicted by Plaintiff's allegation that Defendant ignored the totality of the circumstances in unreasonably denying coverage. (*See* ECF No. 1 ¶¶ 52-54).

While Defendant is correct that an insured's disagreement with an insurer's denial of coverage does not necessarily mean that the insurer did not act in good faith, (ECF No. 21, at 9-10) (citing *All Class*, 3 F.Supp.3d at 417), Defendant's further mischaracterization of Plaintiff's allegation as a mere disagreement does not obscure the fact that Plaintiff has alleged sufficient facts to state a cognizable claim for Defendant's lack of good faith. *See Jerry*, 553 F.Supp.3d at 294-95 (stating that the defendant insurer's argument that it is entitled to disagree with the plaintiff insured's evidence "misses the point" because the court's inquiry focuses on whether the plaintiff has alleged that the defendant failed to make an honest, diligent, and informed judgment based on the totality of circumstances and all available evidence); *see also All Class*, 3 F.Supp.3d 417 (stating that when the defendant insurer provided the plaintiff insureds with a reasoned basis for a denial of coverage, the defendant did not fail to act in good faith in being unpersuaded by the plaintiffs' arguments in support of coverage).

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied. A separate order will follow.

                                        /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge